NO. 21-1676

# United States Court of Appeals
## For the First Circuit

Karen Morales Posada, Williana Rocha,
Amanda Sarmento Ferreira Guimaraes, and Sara Barrientos

*Plaintiffs-Appellees,*

*v.*

Cultural Care, Inc.,

*Defendant-Appellant.*

*On Appeal from the United States District Court
for the District of Massachusetts
Hon. Indira Talwani, District Judge
Case No. 1:20-cv-11862-IT*

## APPELLEES' RESPONSE TO SUPPLEMENTAL BRIEF FOR APPELLANT

DAVID H. SELIGMAN
TOWARDS JUSTICE
PO Box 371680
PMB 44465
Denver, Colorado 80237-5680
Ph: (720) 441-2236

PETER RUKIN
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Ph: (415) 421-1800

MATTHEW C. HELLAND
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Ph: (415) 277-7239

# TABLE OF CONTENTS

Page

**Summary of the Argument**................................................................................1

**Argument** ...........................................................................................................2

A.    THE *YEARSLEY* DEFENSE IS A DEFENSE TO LIABILITY,
       NOT AN IMMUNITY FROM SUIT...............................................................2

    1.    The Use of the Label "Immunity" in Describing the
             *Yearsley* Defense is Not Determinative............................................2

    2.    Unlike Denials of "Qualified Immunity," Denials of the
             *Yearsley* Defense Do Not Implicate a Substantial Public
             Interest Justifying Application of the Narrow Collateral
             Order Doctrine. ...................................................................................5

B.    THE *YEARSLEY* DEFENSE IS TYPICALLY
       COTERMINOUS WITH THE MERITS ..............................................9

C.    IF THE GOVERNMENT IS NOT ENTITLED TO
       COLLATERAL ORDER JURISDICTION FOR ITS
       IMMUNITY, CULTURAL CARE SHOULD NOT BE
       EITHER ..........................................................................................12

D.    CULTURAL CARE'S *YEARSLEY* DEFENSE IS MERITLESS.......13

       CONCLUSION ...............................................................................15

i

# TABLE OF AUTHORITIES

## Cases

*Brown v. Fort Benning Fam. Communities LLC*, 108 F. Supp. 3d 1367 (M.D. Ga. 2015) .................................................................................................13

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ..................................... passim

*Capron v. Off. of Att'y Gen. of Massachusetts*, 944 F.3d 9 (1st Cir. 2019) .............16

*Chicago & N. W. Transp. Co. v. Ulery*, 787 F.2d 1239 (8th Cir. 1986).................10

City of Columbia v. Omni Outdoor Advert., Inc., 499 U.S. 365 (1991).................5

*Digital Equip. Corp. v. Desktop Direct, Inc*., 511 U.S. 863 (1994) .....................6, 7

Ex parte Young, 209 U.S. 123 (1908) .......................................................9

*Faiella v. Fed. Nat'l Mortg. Ass'n*, 928 F.3d 141 (1st Cir. 2019) ...........................13

*Filarsky v. Deli*a, 566 U.S. 377 (2012) .....................................................10

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ................................................9

*Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Texas, Inc.,* 481 F.3d 265 (5th Cir. 2007)................................................................................14

*Lewis v. Clarke*, 137 S. Ct. 1285 (2017)....................................................5

*Lovell v. One Bancorp*, 878 F.2d 10 (1st Cir. 1989) .....................................9

*Marziale v. Correct Care Sols. LLC*, No. 5:18-CV-86-DPM-BD, 2020 WL 8194210 (E.D. Ark. Oct. 30, 2020)...........................................................10

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).................................. 7, 11

*Pullman Const. Indus., Inc. v. United States,* 23 F.3d 1166 (7th Cir. 1994)...........14

Saucier v. Katz, 533 U.S. 194 (2001) ........................................................9

Snyder v. Massachusetts, 291 U.S. 97 (1934) ............................................5

*State of Alaska v. United States*, 64 F.3d 1352 (9th Cir. 1995) ..............................14

*Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021 (10th Cir. 2022)......................12

*U.S. Fid. & Guar. Co. v. Arch Ins. Co.*, 578 F.3d 45 (1st Cir. 2009).....................11

*Villanueva v. United States*, 662 F.3d 124 (1st Cir. 2011) ..................................14

*Will v. Hallock*, 546 U.S. 345 (2006)........................................................... 8, 9, 11

ii

## Statutes

28 U.S.C. § 1291 ................................................................................ 9, 10

28 U.S.C. § 1292 ...................................................................................11

42 U.S.C. § 1983 .....................................................................................9

## Other Authorities

Cultural Care, *What makes us the best au pair agency?*,
  https://culturalcare.com/our-au-pair-agency/ ........................................18

Kate Sablosky Elengold & Jonathan D. Glater, *The Sovereign Shield*, 73 Stan. L.
  Rev. 969 (2021) .......................................................................................7

U.S. Dept. of State, *Designated Sponsor Organizations*,
  https://j1visa.state.gov/participants/how-to-apply/sponsor-
  search/?program=Au%20Pair .................................................................17

## Rules

22 C.F.R. § 62.9 ................................................................................ 13, 15

## SUMMARY OF THE ARGUMENT

*First*, the Government's brief correctly argues that the *Yearsley* defense is a defense to liability that can be adequately protected through appeal after final judgment. The use of the word "immunity" by other courts to describe the *Yearsley* defense is irrelevant to the analysis. The critical question is whether the *Yearsley* defense implicates substantial public interests justifying departure from the bedrock final judgment rule. Unlike qualified immunity, it does not.

*Second*, the *Yearsley* defense is not "completely separate" from the merits. That is true in the majority of *Yearsley* cases, and it is also true here. Cultural Care's defense to the wage claims hinges on the same questions as its preemption defense to Plaintiffs' wage and hour claims, and Plaintiffs' deceptive trade practices claim will necessarily turn on the same factual issues as Cultural Care's only plausible *Yearsley* defense to that claim.

*Third*, the *Yearsley* defense derives from the Government's sovereign immunity and is less broad than the Government's sovereign immunity. It would make little sense for government contractors to benefit from collateral order doctrine jurisdiction for the *Yearsley* defense when the Government does not enjoy collateral order doctrine jurisdiction from denials of its sovereign immunity. Therefore, to rule in Cultural Care's favor, this Court would need to split from the Fifth, Seventh, and Ninth Circuits, which have all concluded that the federal government does not enjoy

1

an immunity from suit that triggers the collateral order doctrine.

*Fourth,* the Government's brief does not support the merits of Cultural Care's *Yearsley* defense. Plaintiff's state wage and deceptive trade practice claims are based on allegations that Cultural Care exceeded any regulatory requirements from the State Department. Cultural Care acts not as an agent of the federal government, according to the federal government's will, but as a private entity subject to competitive pressures acting in a highly regulated market.

## ARGUMENT

### A.   The *Yearsley* Defense is a Defense to Liability, Not an Immunity from Suit

Cultural Care disputes the Government's determination that the *Yearsley* defense is a defense to liability and not an immunity from suit. *See* Supp. Br. at 3-13. The thrust of Cultural Care's argument is that courts use the term "immunity" in describing the doctrine and that *Yearsley* implicates the same policy interests as qualified immunity. But the use of the term "immunity" in describing the doctrine is irrelevant to the collateral order doctrine analysis, and whatever labels courts may use to describe the doctrine, *Yearsley* does not implicate the special policy considerations that support collateral order doctrine review of denials of qualified immunity.

1.   The Use of the Label "Immunity" in Describing the *Yearsley* Defense is Not Determinative

Cultural Care makes much of other courts' use of the word "immunity" in describing the *Yearsley* defense, suggesting that the use of that label means that the defense provides a right to avoid suit entirely. *See* Supp. Br. at 4-5.

As an initial matter, as the Government explains, the use of the term "derivative sovereign immunity" is a "misnomer" for the *Yearsley* defense. U.S. Gov't Br. at 6. Even if the federal government maintains an "unqualified immunity from liability and litigation," federal contractors do not "share" that immunity. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016), as revised (Feb. 9, 2016). *Yearsley* provides a defense when a federal contractor "simply perform[s] as the Government directed." *Id.* at 167. It does not provide an "embracive immunity" from suit. *Id.*

To be sure, non-sovereign entities or people acting on behalf of the government may be able to assert "*personal* immunity defenses," *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (emphasis added), which are distinct from the unqualified sovereign immunity that the government may enjoy. These include qualified immunity. But no court has ever held, and Cultural Care does not argue, that the *Yearsley* defense is a "personal immunity" distinct from the federal government's sovereign immunity. Rather Cultural Care argues that *Yearsley* extends a derivative form of the federal government's sovereign immunity to federal contractors. *Campbell-Ewald* reinforces that this is not the case. 577 U.S. at 167.

3

Thus, "derivative sovereign immunity" is imprecise shorthand for the defense recognized by *Yearsley* and its progeny.

Moreover, in other contexts, courts have repeatedly concluded that the mere use of the label "immunity" does not trigger application of the collateral order doctrine. For example, so-called "*Parker* immunity" or "state action immunity" provides a private antitrust defendant with a defense to suit when the relevant conduct is prescribed by government regulation. But denials of *Parker* immunity do not trigger collateral order doctrine review. As the Eleventh Circuit recently explained:

> Though the Supreme Court has used the shorthand term "*Parker* immunity," *see, e.g.*, *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 370, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), . . . We must figure out what *Parker* really represents in order to avoid what Justice Cardozo referred to as the "tyranny of labels." *Snyder v. Massachusetts*, 291 U.S. 97, 114, 54 S.Ct. 330, 78 L.Ed. 674 (1934).

*SmileDirectClub, LLC v. Battle*, 4 F.4th 1274, 1280 (11th Cir. 2021).

This Court should not accept Cultural Care's invitation to place form over substance. Instead, whether called "derivative sovereign immunity" the "*Yearsley* defense" or any other name, the Court, like the Government, should examine the nature of the doctrine and the policy interests it implicates to determine whether denials of *Yearsley* defenses fall within the narrow category of orders that are appealable under the collateral order doctrine.

2.     Unlike Denials of "Qualified Immunity," Denials of the *Yearsley* Defense Do Not Implicate a Substantial Public Interest Justifying Application of the Narrow Collateral Order Doctrine.

Fundamentally, whether a defense provides a "right to avoid trial" or a "defense to liability" hinges not on labels or formalistic distinctions. After all, as the Supreme Court has acknowledged, "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a right not to stand trial." *Digital Equip. Corp. v. Desktop Direct, Inc*., 511 U.S. 863, 873, (1994) (internal quotations omitted). Rather, the central consideration in distinguishing between a right to avoid trial and a defense to liability is whether "deferring review until final judgment so imperils [an important] interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009). "[T]he third *Cohen* question, whether a right is 'adequately vindicable' or 'effectively reviewable,' simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Digital Equip. Corp*., 511 U.S. at 878-79.

The interests at stake in denials of *Yearsley* defenses do not justify application of the collateral order doctrine. Subjecting Cultural Care to trial in the face of a valid *Yearsley* defense would not impinge on its discretion and initiative, as is the case in appeals involving the *qualified* immunity of government officials or their

contractors. *See* Supp. Br. at 9-10; *Will*, 546 U.S. at 352 (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). The *Yearsley* defense was not designed to protect the initiative and discretion of contractors. *Yearsley* applies where a contractor does *not* act according to its initiative and discretion but rather where the contractor acts according to the federal government's specifications. *See* Kate Sablosky Elengold & Jonathan D. Glater, *The Sovereign Shield*, 73 Stan. L. Rev. 969, 1001 (2021) ("[U]nder the agency principles underlying *Yearsley* immunity, courts have looked to see if the contractor is hired as an 'independent contractor,' expected to use its expertise and discretion to decide how best to get the job done, or as something more akin to an agent of the United States, just following orders.").

Furthermore, in the qualified immunity context, collateral order doctrine review is important to ensure that state officials can exercise their discretion in the face of unclear law without fear of trial. But as the Supreme Court has explained, defendants seeking to invoke the *Yearsley* defense do not argue that the law is not clearly established and therefore that they should have the discretion to act without fear of trial. *Campbell-Ewald Co.*, 577 U.S. at 167–68 ("Qualified immunity reduces the risk that contractors will shy away from government work. But the doctrine is bounded in a way that Campbell's 'derivative immunity' plea is not. Qualified immunity may be overcome . . . if the defendant knew or should have known that his conduct violated a right 'clearly established' at the time of the episode in suit.").

6

*Will v. Hallock* further illustrates the point. There, federal customs agents facing a *Bivens* claim requested review of a collateral order refusing to dismiss the plaintiffs' claims under the Federal Tort Claims Act's judgment bar. 546 U.S. 345, 348 (2006). The customs agents asserted an interest in avoiding trial that is similar to the interests Cultural Care attempts to assert here. If trial were to proceed, according to the defendants, "the efficiency of Government will be compromised and the officials burdened and distracted, as in the qualified immunity case." *Id.* at 353. The Supreme Court quickly dispatched with this attempted comparison to qualified immunity:

> The nub of qualified immunity is the need to induce officials to show reasonable initiative when the relevant law is not "clearly established," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *cf. Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); a quick resolution of a qualified immunity claim is essential. There is, however, no such public interest at stake simply because the judgment bar is said to be applicable. It is not the preservation of initiative but the avoidance of litigation for its own sake that supports the judgment bar, and if simply abbreviating litigation troublesome to Government employees were important enough for *Cohen* treatment, collateral order appeal would be a matter of right whenever the Government lost a motion to dismiss under the Tort Claims Act, or a federal officer lost one on a *Bivens* action, or a state official was in that position in a case under 42 U.S.C. § 1983, or *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In effect, 28 U.S.C. § 1291 would fade out whenever the Government or an official lost an early round that could have stopped the fight.

*Will*, 546 U.S. at 353–54. Cultural Care's attempt to analogize *Yearsley* immunity to qualified immunity should face the same fate.

Furthermore, under binding First Circuit law, even if Cultural Care did assert "qualified immunity" in the face of unclear law—which it does not—it would still not be entitled to piecemeal appeal on an interlocutory basis of the District Court's denial of that defense. As this Court has concluded, a public official's right to interlocutory review of denials of qualified immunity hinges on "a concern regarding the disruptive effect litigation has on effective *government*." *Lovell v. One Bancorp*, 878 F.2d 10, 13 (1st Cir. 1989) (emphasis added). Those same concerns do not arise when private entities assert qualified immunity. *Id.* (denial of qualified immunity for private entity purportedly operating on behalf of the state is "is not final under 28 U.S.C. § 1291"); *see also Chicago & N. W. Transp. Co. v. Ulery*, 787 F.2d 1239, 1241 (8th Cir. 1986).

This case law was not overruled by *Filarsky v. Deli*a, 566 U.S. 377 (2012). While *Filarsky* clarified that qualified immunity is available to private parties acting on behalf of the government—a proposition that *Lovell* accepted as true for the purposes of its collateral order doctrine analysis—*Filarsky* did not hold that private parties may obtain collateral order doctrine review of denials of qualified immunity. *See, e.g.*, *Marziale v. Correct Care Sols. LLC*, No. 5:18-CV-86-DPM-BD, 2020 WL 8194210, at *6 (E.D. Ark. Oct. 30, 2020), report and recommendation adopted, No. 5:18-CV-86-DPM, 2021 WL 183452 (E.D. Ark. Jan. 19, 2021) ("Unlike public officials, private individuals do not have the automatic right to an interlocutory

8

appeal of qualified immunity."). And of course, even if collateral order doctrine review of denials of qualified immunity for private individuals is available post-*Filarsky,* that does not resolve the availability of collateral order doctrine review to denials of the *Yearsley* defense. Unlike qualified immunity, *Yearsley* does not implicate special concerns about protecting the initiative of public officials in the face of unclear law.

Finally, as the Government points out, concluding that there is not appellate jurisdiction to address denials of the *Yearsley* defense does not leave Cultural Care without an appellate remedy if it truly finds itself in special circumstances requiring immediate appellate review. It always has access to an interlocutory appeal under 28 U.S.C. § 1292(b) and, in an extreme circumstance, mandamus. *See* U.S. Gov't Br. at 15. Those mechanisms, and not the blunt and categorical collateral order doctrine, are the tools available to parties like Cultural Care asserting special, case-specific interests in avoiding trial. *See id.* at 11-13 ("The collateral order doctrine is 'applied narrowly and interpreted strictly.'" (quoting *U.S. Fid. & Guar. Co. v. Arch Ins. Co.*, 578 F.3d 45, 55 (1st Cir. 2009)). But Cultural Care has not sought to avail itself of either of those mechanisms here.

## B.    The *Yearsley* Defense is Typically Coterminous with the Merits

Cultural Care also argues that its *Yearsley* defense argument is "completely separate from" the merits, and thus the Government was wrong to argue that the

*Yearsley* defense is typically "coterminous" with the merits. *See* Supp. Br. at 11-12; U.S. Gov't Br. at 14-15; *Will*, 546 U.S. at 349. As an initial matter, this entirely misses the nature of the Court's inquiry. The question is not whether in this case the collateral order doctrine permits an interlocutory review of a denial of the *Yearsley* defense. The question is whether such an interlocutory review should be allowed for denials of the *Yearsley* defense as a categorical matter. *Mohawk Indus.*, 558 U.S. at 107; *see also Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1035 (10th Cir. 2022) ("We must, then, evaluate appealability under the collateral order doctrine without regard to a particular injustice that may be averted by an immediate appeal in a given case.").

As a categorical matter, whether a defendant exceeds the scope of its agency with the government will typically also answer the question of whether the defendant acted illegally. U.S. Gov't Br. at 8 ("By contrast, when a government contractor lawfully exercises lawfully delegated authority, the contractor is not immune from suit for unlawful conduct. Rather, the contractor is protected from liability only to the extent—and only because—it is acting lawfully." (citing *Campbell-Ewald*, 577 U.S. at 166)). In other words, the *Yearsley* defense will often overlap with the merits.

This case is no different than the norm. The Government correctly observes that Cultural Care's *Yearsley* defense is coterminous with the merits of the preemption analysis. *Id.* at 15. And, a finding of liability on Plaintiffs' deceptive

trade practices claims would similarly be coterminous with a finding that the *Yearsley* defense does not apply. Cultural Care makes much of the State Department's requirement that it "[p]rovide accurate program information and materials to prospective exchange visitors, host organizations, and host employers…." 22 C.F.R. § 62.9(d)(3). However, if as Plaintiff alleges, Cultural Care made misrepresentations to host families and au pairs, giving rise to liability under the state deceptive trade practices claims, Cultural Care necessarily also operated outside the scope of any government authority conveyed by its regulatory authority to provide accurate information. *See id.* Indeed, it is hard to see how a government contractor could be operating within authority conveyed by the government while also committing fraud. *See Faiella v. Fed. Nat'l Mortg. Ass'n,* 928 F.3d 141, 150 (1st Cir. 2019) ("[T]he record is devoid of anything that might suggest that Ditech personnel were granted actual authority by Fannie Mae to make the allegedly inaccurate representations that the appellant attributes to them."); *Brown v. Fort Benning Fam. Communities LLC*, 108 F. Supp. 3d 1367, 1374 (M.D. Ga. 2015) ("the Court can conceive of no legitimate reason to protect a private entity from [fraud] claims, particularly when no evidence exists in the present record that the Army played a material role in the alleged misrepresentations.").

In this case, as in so many other *Yearsley* cases, the question of whether Defendant's conduct violated the law will turn on the same considerations as the

11

question whether the government authorized the conduct at issue. For this reason too, denials of the *Yearsley* defense are not appealable, as a categorical matter, under the collateral order doctrine.

## C.　If the Government is Not Entitled to Collateral Order Jurisdiction for Its Immunity, Cultural Care Should Not Be Either

As Cultural Care points out, the Government's amicus brief is silent with respect to whether it is entitled to appeal denials of its own sovereign immunity under the collateral order doctrine. *See* Supp. Br. at 4.

The Government's unsurprising silence on this question, however, does not change the fact that in order to rule that it has jurisdiction in this case, the Court would need to expressly split from the Fifth, Seventh, and Ninth Circuits, which have all explained that the federal government's sovereign immunity is a defense to liability, and not an immunity from suit. *See Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Texas, Inc.,* 481 F.3d 265, 279 (5th Cir. 2007); *State of Alaska v. United States*, 64 F.3d 1352, 1355 (9th Cir. 1995); *Pullman Const. Indus., Inc. v. United States,* 23 F.3d 1166, 1169 (7th Cir. 1994).[1] After all, the *Yearsley* defense is no broader than the federal sovereign immunity from which it is purportedly derivative. *Campbell-Ewald*, 577 U.S. at 166 (There is "no authority for the notion

---

[1] The First Circuit has described federal sovereign immunity as "immunity from suit." *Villanueva v. United States*, 662 F.3d 124, 126 (1st Cir. 2011). But the application of such a label does not resolve the issue. *See supra* at 2-4.

that private persons performing Government work acquire the Government's embracive [sovereign] immunity.").

As explained above, however, and the for the reasons asserted by the Government, this Court need not address the appealability of orders addressing the federal government's sovereign immunity to conclude that it does not have jurisdiction here. That is because whatever the federal government's sovereign immunity may be, the *Yearsley* defense is not an immunity from suit that should be protected through immediate appeal under the collateral order doctrine.

### D. Cultural Care's *Yearsley* Defense Is Meritless

Finally, Cultural Care argues that the Government's brief supports its assertion of the *Yearsley* defense on the merits. *See* Supp. Br. at 13-15. The Government specifically avoids addressing those merits issues because it concludes the inquiry starts and ends with jurisdiction. Indeed, the Government explicitly declines the Court's invitation to weigh in on the import of a State Department regulation barring Cultural Care from asserting an agency relationship with the Government. *See* U.S. Gov't Br. at 15 n. 3; *see also* 22 C.F.R. § 62.9(d)(5) ("Sponsors must … [not] represent that its [*sic*] exchange visitor program is endorsed, sponsored, or supported by the Department of State or the U.S. Government.").

Cultural Care also attempts again to latch on to language from *Capron* stating

13

that au pair regulations do not "require sponsors to pay au pairs or 'to ensure that host families comply with [state] wage and hour laws.'" While potentially relevant to the preemption analysis, it is irrelevant to *Yearsley*. Supp. Br. at 14 (quoting *Capron v. Off. of Att'y Gen. of Massachusetts*, 944 F.3d 9, 34 (1st Cir. 2019)). Nothing about that proposition from *Capron* suggests that Cultural Care acted within authority granted to it by the federal government when it (1) entered into a contractual relationship with its au pairs exceeding the State Department's minimum requirements, thus triggering state-law employer responsibilities, *see* Appellees Br. at 32-33, or (2) deceived host families about their wage obligations to their au pairs, causing au pairs to be underpaid, *id.* at 31-32.

Cultural Care is a private entity in a heavily regulated field operating not just according to government regulations, but also pursuant to market pressures. *See* Appellees Br. at 27 (quoting District Court). While Cultural Care is "authorized" as a J-1 Visa Au Pair sponsor, so are 13 other private companies. *See* U.S. Dept. of State, *Designated Sponsor Organizations*, https://j1visa.state.gov/participants/how-to-apply/sponsor-search/?program=Au%20Pair. Cultural Care, just like other au pair sponsors, is paid by host families, not by the government. Those host families use Cultural Care's services, and Cultural Care competes with other au pair sponsors both over price and over the degree of oversight, support, training, and matching services it provides to au pairs and host families, both during the application process

and after placement. It provides those services—which may subject it to liability under the employment laws—explicitly because of the private competitive advantages Cultural Care gains over other au pair sponsors in doing so.[2] *Yearsley* does not insulate from damages private conduct taken for private competitive advantage, even when pursued in a highly regulated market.

## CONCLUSION

For all these reasons, Plaintiff respectfully requests that Cultural Care's appeal be denied and this case be remanded to the District Court for further proceedings.

Respectfully Submitted,

*s/David H. Seligman*
DAVID H. SELIGMAN
TOWARDS JUSTICE
PO Box 371680
PMB 44465
Denver, Colorado 80237-5680
Ph: (720) 441-2236
david@towardsjustice.org

MATTHEW C. HELLAND
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104

---

[2]     Cultural Care, *What makes us the best au pair agency?*, https://culturalcare.com/our-au-pair-agency/ ("While other agencies are more hands-off when it comes to matching, we provide all of our families with support from a dedicated Matching Specialist, in addition to our customizable online matching tools."); *id*. ("By the time your au pair arrives to your home, they will have received specialized training. . . ."); *id.* ("Every host family on our program has a dedicated support team. …").

Ph: (415) 277-7239
helland@nka.com

PETER RUKIN
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Ph: (415) 421-1800
prukin@rukinhyland.com

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certified that this document complies as follows:

This document complies with the type-volume limit of Fed. R. App. P. 32(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3601 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14-point Times New Roman font

Date: December 13, 2022            *s/David H. Seligman*
                                   Attorney for Plaintiffs-Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2022 I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to all Defendants-Appellees that have appeared:


Date: December 13, 2022            *s/David H. Seligman*
                                   Attorney for Plaintiffs-Appellees